Submitted November 26, 2013, affirmed April 16, petition for review denied September 11, 2014 (356 Or 163)

CITY OF BEAVERTON,
*Plaintiff,*
*and*

STATE OF OREGON,
*Respondent,*

*v.*

GEORGE WILLIS DEVON PACK,
*Defendant-Appellant.*

Beaverton Municipal Court
UC7591381; A149680

324 P3d 567

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Defendant appeals his conviction for failure to perform the duties of a driver, challenging the adequacy of the jury instructions delivered by the trial court. In particular, defendant contends that the trial court erroneously instructed the jury "that the state needed only to prove that defendant had a culpable mental state with respect to the occurrence of the collision and that no mental state applied to the damage element" of the crime. We disagree with the basic premise of defendant's argument, *viz.*, that the court instructed the jury that the state was not required to prove that defendant had a culpable mental state with respect to whether the vehicle he struck had sustained damage. In our view, the challenged jury instruction—considered together with the other instructions given—informed the jury that a mental-state requirement (here, knowledge) *did* apply to the "damage element" of the charged crime. Consequently, we affirm.

"We review the jury instructions for errors of law." *State v. Pierce*, 235 Or App 372, 374, 232 P3d 978 (2010). In doing so, we consider the entirety of the instructions given—both when determining whether the trial court erred in giving a specific challenged instruction and in determining whether any such error was prejudicial. *See State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006) ("In determining whether it was error to give a particular instruction, we read the instructions as a whole to determine whether they state the law accurately."); *Pierce*, 235 Or App at 374 ("In determining whether an instructional error requires reversal, we assess potential prejudice by considering the jury instructions as a whole."). Moreover, "[b]ecause defendant is challenging the trial court's jury instructions, and not the sufficiency of the evidence supporting his conviction, we review all pertinent parts of the record." *State v. Naudain*, 254 Or App 1, 2, 292 P3d 623 (2012), *rev den*, 353 Or 788 (2013). Accordingly, we describe the evidence as it was presented at the jury trial.

Defendant was arrested the day after a minor motor-vehicle accident occurred in the parking lot associated with the apartment complex where he lived. On the day

of the accident, a few employees of a landscaping company had traveled in the company's truck to work at that apartment complex. One of the employees testified that he heard a noise as he was working about 10 feet away from the landscaping company's truck. He looked at the truck and saw that it "was moving" even though nobody was in it. At about the same time, he saw a red Nissan Sentra leaving the parking area. He tried to approach the car, but it left too fast for him to reach. Another of the landscaping company's employees testified that the red Nissan had left the parking lot "in a hurry." A third employee testified that the company's truck was damaged ("a little bit bent * * * on top of the tire"), and he called the police to report that somebody had hit the truck. None of the employees actually saw the impact.

The day after the accident, Beaverton Police Officer Christopher Crosslin spoke with defendant, who said that he was the only person who had driven the red Nissan the previous day and that he did not remember having hit anybody with his car.[1] Crosslin and defendant went out to the parking lot to look at defendant's car, which was not parked in defendant's normal parking space. Defendant explained that he had parked further away from his apartment to get some exercise.

After further discussion, Crosslin read defendant his *Miranda* rights, which defendant said he understood. Crosslin then "challenged" defendant, saying that he did not believe what defendant was telling him and asking defendant to be honest. According to Crosslin, defendant eventually acknowledged that "there may have been a tap to the complainant's vehicle as he was backing out of his parking spot yesterday." Crosslin again asked defendant why he had not parked in his usual parking spot when he returned to the apartment complex. Defendant "initially maintained that he wanted to get exercise, but then eventually said, 'I was worried about the probability of getting caught.'" Crosslin then cited defendant for failing to perform the duties of a driver, in violation of ORS 811.700.

---

[1] It is not clear from the record how Crosslin knew that defendant was associated with the red Nissan.

Defendant testified in his own behalf at trial, explaining that he had been under a great deal of stress at the time of the incident and had been in a hurry to get to a library where he was studying for a professional examination. Defendant also testified that his hearing had been impaired at the time of the incident by a severe buildup of earwax. At least in part because of that, he asserted, he had not immediately realized that his car had hit the landscaping company's truck. Defendant also testified that he had parked his car away from his normal spot when he returned to the apartment complex so he could get exercise, not because he was trying to hide anything. In answer to Crosslin's testimony, defendant acknowledged that he had understood the questions that Crosslin asked him on the day after the accident, and defendant testified that he had answered those questions honestly. Defendant asserted that any ambiguity in his answers was the result of a lengthy interrogation by Crosslin and the way in which the officer had phrased his questions. Defendant acknowledged that "ultimately the evidence shows" that he did hit the pickup truck. He testified that he did not reach that conclusion—that he had probably bumped into the truck—until he was arrested.

Before trial, defendant and the state each submitted proposed jury instructions. The parties' requested instructions overlapped significantly; in particular, both parties requested the uniform instruction that describes the elements of the crime of failure to perform the duties of a driver when property is damaged, as defined by ORS 811.700.[2] Although ORS 811.700 does not itself specify a

---

[2] ORS 811.700 provides, in part:

"(1) A person commits the offense of failure to perform the duties of a driver when property is damaged if the person is the driver of any vehicle and the person does not perform duties required under any of the following:

"* * * * *

"(b) If the person is the driver of any vehicle that collides with any vehicle that is unattended, the person shall immediately stop and:

"(A) Locate and notify the operator or owner of the vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle; or

"(B) Leave in a conspicuous place in the vehicle struck a written notice giving the name and address of the driver and of the owner of the vehicle doing the striking and a statement of the circumstances thereof."

culpable mental state, both parties asked the trial court to deliver an instruction that incorporated a "knowingly" mental state, and—in accordance with that request—the trial court gave this instruction:

"In this case to establish the crime of Failure to Perform the Duties of a Driver when property is damaged, the State must prove beyond a reasonable doubt the following seven elements:

"Number one, the act occurred in the City of Beaverton, Washington County, Oregon.

"Number two, that the act occurred on or about May 18th of 2011.

"Number three, that [defendant] was the driver of a vehicle that collided with any vehicle that was unattended.

"And that the collision resulted in damage to an unattended vehicle.

"And that the collision occurred on premises open to the public.

"And that [defendant] knew he was involved in a collision that was likely to have resulted in damage to any unattended vehicle.

"And it must be proven beyond a reasonable doubt that [defendant] did not immediately stop [and perform the duties of a driver as defined in ORS 811.700(1)(b).]"

The instruction at issue in this appeal relates to the sixth element of the crime described above: that defendant "knew he was involved in a collision that was likely to have resulted in damage to any unattended vehicle." In association with that mental-state requirement, defendant requested the following additional instruction:

"A person acts 'knowingly' or 'with knowledge' if that person acts with an awareness that a particular circumstance exists.

"When used in the phrase '[defendant] knew he was involved in a collision that was likely to have resulted in damage to any unattended vehicle,' a finding that [defendant] acted 'knowingly' or 'with knowledge' means a finding that [defendant] acted with an awareness that he had been involved in a collision *and with an awareness* [that]

such a collision was likely to have resulted in damage to any unattended vehicle."

(Emphasis added.)

In a discussion of the parties' requested jury instructions, the trial court disapproved the instruction quoted above, reasoning that the state was not required to prove that" the defendant was aware that damage had occurred." Instead, the court explained, the state was required to prove only that defendant knew "he was involved in an accident which like—which was likely to have resulted in damage to property." In response, defendant observed that the citation that Crosslin issued "alleges that the offense was committed knowingly" and argued that the state was required "to prove what they plead[ed] with regard to culpable mental state." Defendant acknowledged that the state did not have to prove that defendant *knew* that he had caused damage, and pointed out that his requested instruction did not include such a requirement. Instead, defendant argued, the state needed to prove, essentially, that defendant "knew [the accident] was something he should have stopped for." In its objection to defendant's proffered instruction, the state focused on its contention that the requested instruction improperly told the jury that the state was required to prove "that the defendant knew that he caused damage, as well as he knew he created a collision."

In the end, the trial court orally delivered an amended version of defendant's requested mental-state instruction, as follows:

"A person acts knowingly or with knowledge if that person acts with an awareness that a particular circumstance exists.

"When used in the phrase, '[defendant] knew he was involved in a collision that was likely to have resulted in damage to any unattended vehicle,' 'knowingly or with knowledge' means that [defendant] acted with an awareness that he was involved in a collision, *and it was likely damage had resulted to the unattended vehicle struck in the collision.* Knowingly or with knowledge."

(Emphasis added.) Thus, the orally delivered mental-state instruction largely mirrored the one proffered by defendant,

except that the delivered instruction did not repeat the requirement that the state prove defendant's "awareness" immediately before it referred to the likelihood that damage had resulted from the collision.[3] After instructions and deliberation, the jury ultimately convicted defendant of the charged crime.[4]

On appeal, defendant argues that the trial court erred by "giving a jury instruction that affirmatively relieved the jury of determining whether defendant had a culpable mental state with respect to the damage element of failure to perform the duties of a driver when property is damaged." He contends that the delivered mental-state instruction "required the jury to determine only whether defendant was aware that he had been in a collision" and erroneously did *not* require the jury to determine whether defendant also "had a culpable mental state with respect to whether damage resulted to the other vehicle." Specifically, defendant argues that the delivered instruction was flawed because it failed to inform the jury that the state had to prove that defendant knew that the accident was likely to have caused actual damage at the time he failed to perform the required duties. Defendant contends that the knowledge requirement applies to the "damage element" for two reasons. First, defendant argues that ORS 161.095(2) requires the state to prove a culpable mental state with respect to that element of the crime.[5] Second, defendant argues that the state committed itself to proving that defendant acted

---

[3] In describing the jury instruction that he challenges on appeal, defendant quotes solely the instruction as orally delivered by the trial court; he does not point to any written analog. Indeed, although the transcript indicates that the trial court intended to give the jury written instructions, in addition to the jury instructions that the trial court delivered orally, the trial-court file does not include copies of any written instructions that the court may actually have given the jurors (with respect to instructions, the file includes only copies of the instructions as requested by the parties). Accordingly, our analysis necessarily relies only on the instructions as orally delivered by the trial court.

[4] The judgment in this case states that defendant was convicted of "HIT AND RUN." Neither party has raised any issue related to the discrepancy between the crime as described in the citation—on which the challenged jury instruction was based—and the crime as described in the judgment.

[5] ORS 161.095(2) provides:

"[A] person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

knowingly with respect to *all* elements of the crime when Crosslin checked a box labeled "[k]nowing" on the citation that he issued to defendant.

In response to defendant's first argument, the state contends that defendant did not preserve his claim that the challenged instruction was flawed because it omitted the statutory requirement that the state prove a culpable mental state with respect to the "damage element." We reject that lack-of-preservation argument without further discussion. On the merits, the state contends that, under *State v. Hamlett*, 235 Or App 72, 230 P3d 92 (2010), the state was not statutorily required to prove that defendant knew that the property that he hit likely had been damaged. In response to defendant's second argument, the state contends that the citation did not unambiguously indicate that the "knowing" mental state would apply to the "damage element" as well as to defendant's awareness that a collision had occurred. Because the citation "was ambiguous as to whether 'knowingly' applies to the damage element," the state argues, the citation did not commit the state to prove a mental-state element that the statute describing the crime did not itself require.

We reject defendant's arguments, although for reasons different from those proffered by the state. Both of defendant's arguments are based on the premise that the delivered jury instructions informed the jury "that it was not required to decide whether defendant had a culpable mental state with respect to whether damage resulted to the other vehicle." As defendant emphasizes, his argument on appeal is not about *what level* of culpable mental state attaches to the "damages element," but is based on his contention that the delivered jury instructions "*entirely* relieved the state from proving a culpable mental state with respect to the damage element." (Emphasis added.) We do not agree that the jury instructions had that effect.

As noted above, the delivered jury instructions described seven elements of the charged crime, including the following facts that the state had the burden to prove:

"[T]hat [defendant] was the driver of a vehicle that collided with any vehicle that was unattended.

"And that the collision resulted in damage to an unattended vehicle.

"*****

"And that [defendant] knew he was involved in a collision that was likely to have resulted in damage to any unattended vehicle."

Thus, the trial court told the jury that the state had to prove, among other things, these two facts: (1) that a collision occurred, and (2) "that the collision resulted in damage." The instruction *also* told the jury that the state had to prove that defendant "knew he was involved in a collision that was likely to have resulted in damage to any unattended vehicle." That instruction, itself, informed the jury that the state had to prove that defendant *knew* that the collision he caused "was likely to have resulted in damage"—*i.e.*, that defendant acted with a culpable mental state with respect to that element of the crime. Nothing about the instruction quoted above would have implied to the jury that the state had to prove only that defendant knew that a collision had occurred, without respect to whether he was aware that any damage probably had resulted.

Indeed, defendant acknowledges that the jury "might plausibly understand" the instruction quoted above "to require the jury to find that defendant knew that the collision likely resulted in damage." Nonetheless, he argues, a different instruction delivered by the trial court—the instruction specifically related to defendant's mental state—required the jury to find *only* "that defendant was aware of the collision" and not that he had any awareness that damage likely resulted. That challenged instruction told the jury that,

"[w]hen used in the phrase, '[defendant] knew he was involved in a collision that was likely to have resulted in damage to any unattended vehicle,' 'knowingly or with knowledge' means that [defendant] acted with an awareness that he was involved in a collision, *and it was likely damage had resulted to the unattended vehicle struck in the collision.* Knowingly or with knowledge."

(Emphasis added.)

Defendant contends that the jury would have understood the emphasized phrase to relate only to the physical circumstances of the crime—that is, to the *fact* that it was likely that damage had resulted to the unattended vehicle—and not to the state's need to prove defendant's awareness of that fact. He focuses on the presence of a comma separating the emphasized phrase from the one that precedes it, suggesting that the presence of "interruptive punctuation" signaled that the mental-state requirement mentioned in the phrase before the comma did not apply to the phrase that followed it. For three reasons, we disagree.

First, the challenged instruction related specifically to defendant's mental state, not to the other elements of the crime. The instruction started by referring to what defendant "knew"—including that "he was involved in a collision *that was likely to have resulted in damage*"—and continued by explaining that variants on the word "knew" meant that defendant "acted with an awareness that he was involved in a collision, *and it was likely damage had resulted.*" (Emphases added.) And in case that instruction had not sufficiently directed the jury's attention to defendant's mental state, the trial court concluded the instruction by emphasizing its focus: "Knowingly or with knowledge."

Second, the challenged instruction would not have made any sense if considered as describing an element of the crime other than defendant's mental state. With respect to the physical circumstances of the crime, the trial court instructed the jury that the state had to prove that the collision *did* result in damage to an unattended vehicle. The challenged instruction referred, instead, to *likely* damage to the unattended vehicle. That reference makes sense only when understood in relationship to defendant's mental state—*i.e.* his knowledge that damage *likely* resulted from the collision. It could not properly be understood to refer to the physical result of the collision, which the state had to prove actually caused damage.

Finally, whatever significance a comma might have in a written jury instruction, we have no such instruction before us. Rather, we have only a transcript of the court's orally delivered instructions. The presence of a comma in

such a transcript cannot bear the weight that defendant places on it. We are not persuaded that the comma indicates that the trial court paused or otherwise delivered the instruction with some inflection that would have changed its meaning in the way that defendant suggests.

In short, the instructions delivered by the trial court, when considered as a whole, did not "relieve[] the state of proving a culpable mental state with respect to a material element of the crime," as defendant contends. Accordingly, we affirm.

Affirmed.