SHORR, J.
*1121 *378 Defendant appeals a judgment of conviction for unlawful cutting and transport of special forest products. ORS 164.813(2). Defendant was charged by information with "remov[ing] a special forest product, to wit: a cedar stump" without a permit. In defendant's sole assignment of error, he argues that the trial court impermissibly amended the charging instrument by instructing the jury on the definition of "harvest" under ORS 164.813(1)(a) because the charging instrument pleaded only removal, and not harvest, as the state's theory of defendant's culpable conduct. The state argues that the trial court's instruction on the definition of harvest did not substantively amend the charging instrument because the definition of "harvest" encompasses the conduct of removal. We conclude that the trial court's jury instruction on the definition of "harvest" did not substantively amend the indictment. Therefore, the trial court did not err, and we affirm.
The facts are undisputed. Two Forest Service employees discovered defendant in the Rogue River Siskiyou National Forest chaining a large cedar stump on a trailer. The stump was so large that it caused the trailer to sag to the ground. Defendant did not have a permit to take the stump, and the Forest Service employees knew that the stump had been sold previously to a lumber company. One of the employees told defendant that he could not take the stump without a permit, and defendant agreed to leave the stump and "go talk to a ranger about a permit." Defendant later went to the ranger station and inquired about obtaining a permit for the stump and was denied. Defendant later told a sheriff's deputy that he "knew he had screwed up because he didn't have a permit."
Defendant was eventually arrested and charged with unlawful cutting and transport of special forest products in violation of ORS 164.813. Specifically, the district attorney's information alleged that defendant "unlawfully and knowingly remove [d ] a special forest product, to wit: a cedar stump, from a place without a written permit in the said defendant's possession." (Emphases added.)
*379 At trial, the court instructed the jury on the law generally as follows: "[A] person commits the crime of Unlawful Cutting and Transport of Special Forest Products if the person * * * harvests or removes special forest products from a place" without a permit. (Emphasis added.) Then the court instructed the jury on the statutory definition of "harvest." Defendant objected on the basis that "harvest" was not a theory that was pleaded in the charging instrument. The court gave the following instruction, taken from ORS 164.813(1)(a), over defendant's objection:
" 'Harvest' means to separate by cutting, digging, prying, picking, peeling, breaking, pulling, splitting or otherwise removing a special forest product from its physical connection or point of contact with the ground, or the place or position where it lay."
We note that the court also specially instructed the jury that, "[i]n this case, to establish the crime of unlawful cutting and transport of special forest products, the state must prove beyond a reasonable doubt * * * [that] defendant unlawfully and knowingly removed a special forest product, a cedar stump * * *." (Emphasis added.) Thus, the jury was instructed to decide whether defendant removed a special forest product as proscribed by the statute. The jury found defendant guilty, and the trial court entered a judgment of conviction.
Defendant now appeals the judgment of conviction, assigning error to the trial court's jury instruction on the definition of "harvest." We review jury instructions for legal error. State v. Pierce , 235 Or. App. 372, 374, 232 P.3d 978 (2010). To determine *1122 whether a trial court erred in giving a particular instruction and, if so, whether that error was prejudicial, we review the entirety of the instructions as they were given to the jury. City of Beaverton v. Pack , 262 Or. App. 288, 289, 324 P.3d 567, rev. den. , 356 Or. 163, 334 P.3d 971 (2014).
"A jury instruction can have the effect of amending a charging instrument." State v. Leachman , 285 Or. App. 756, 759, 398 P.3d 919 (2017) (citing State v. Alben , 139 Or. App. 236, 243, 911 P.2d 1239, rev. den. , 323 Or. 153, 916 P.2d 312 (1996) ). Article VII (Amended), section 5, of the Oregon Constitution *380 provides that amendments to a charging instrument are permissible only when the change is one of "form"; substantive amendments are impermissible. State v. Wimber , 315 Or. 103, 113, 843 P.2d 424 (1992). A substantive amendment is one that "alter[s] the essential nature of the indictment against defendant, alter[s] the availability to him of defenses or evidence, or add[s] a theory, element, or crime." Id. at 114, 843 P.2d 424. As noted, defendant contends that the instruction on the definition of "harvest" effectively amended the charging instrument by instructing the jury on a different theory than the one charged.
In defendant's view, to "remove" as an element of the offense in ORS 164.813(2) means to remove a special forest product entirely from the landowner's land, which defendant contends that he did not do because he did not take the cedar stump out of the federal forest land. In contrast, according to defendant, to harvest by "otherwise removing" as defined by ORS 164.813(1)(a) means merely to collect things while still on the landowner's land, which defendant concedes that he did when he loaded the cedar stump onto the trailer. Therefore, defendant argues, the jury instruction on the definition of "harvest" permitted the jury to convict defendant on a theory not pleaded in the charging instrument. The state contends that there is no meaningful distinction between removal under ORS 164.813(2) and "otherwise removing" under the definition of "harvest" in ORS 164.813(1)(a). Further, the state argues that, even if there is a distinction, the charging instrument was broad enough to encompass both.
The parties' contentions require us to construe the meaning of "remove" under ORS 164.813 using the principles set out in State v. Gaines , 346 Or. 160, 206 P.3d 1042 (2009), and PGE v. Bureau of Labor and Industries , 317 Or. 606, 859 P.2d 1143 (1993). In any statutory construction analysis, the "paramount goal" is to effectuate the intent of the legislature. Gaines , 346 Or. at 171, 206 P.3d 1042. We first consider the text of the statute in context, and then, if necessary, "any relevant legislative history, giving that history the weight it merits." State v. Jacobs , 276 Or. App. 453, 455, 369 P.3d 82 (2016) (citing Gaines , 346 Or. at 172, 206 P.3d 1042 ).
*381 The special forest products statute, ORS 164.813, describes types of conduct that are illegal if the person doing the activity does not possess a permit: cutting or splitting wood into special forest products, ORS 164.813(2) ; harvesting or removing special forest products, ORS 164.813(2) ; transporting special forest products, ORS 164.813(3) ; and purchasing or acquiring special forest products for resale, ORS 164.813(4). The subsection under which defendant was charged provides as follows:
"[I]t is unlawful for any person other than the landowner to cut or split wood into special forest products or to harvest or remove special forest products from a place unless the person has in possession a written permit to do so from the owner of the land from which the wood is cut or the special forest products taken."
ORS 164.813(2) (emphases added). The statute also contains a number of definitions. See ORS 164.813(1). Pertinent to our discussion is the definition of "harvest":
" 'Harvest' means to separate by cutting, digging, prying, picking, peeling, breaking, pulling, splitting or otherwise removing a special forest product from :
"(A) Its physical connection or point of contact with the ground or vegetation upon which it was growing; or
"(B) The place or position where it lay."
ORS 164.813(1)(a) (emphasis added). The statute does not define the term "remove."
*1123 Defendant employs a number of rules of statutory construction to argue that removal as an element of the offense has a different meaning than to harvest by otherwise removing a special forest product. Primarily, defendant points to the prepositional phrases that follow the two instances of remove. ORS 164.813(2) states that it is unlawful to "remove special forest products from a place ." (Emphasis added.) In contrast, harvest is defined, inter alia , as otherwise removing special forest products from "[a] physical connection or point of contact with the ground" or from "[t]he place or position where it lay." ORS 164.813(1)(a)(A), (B). Defendant argues that the "place" referenced in ORS 164.813(2) is the entirety of the landowner's land because it *382 is the only "place" mentioned in the statute. To be guilty of removal under ORS 164.813(2), as charged in the information, defendant argues that he would have had to remove the cedar stump from the federal forest land. On the other hand, according to defendant, to harvest means merely to collect things while on the landowner's land because the definition of "harvest" under ORS 164.813(1)(a) only requires that the special forest product be separated from its "point of contact with the ground" or the "place or position where it lay." To be guilty of harvesting the stump by "otherwise removing" it, defendant argues, the state merely needed to prove that defendant collected the stump while in the forest.
We agree with defendant that, considering its context, the statute at least requires that the "place" be located within the landowner's land. After all, the landowner could not give permission to remove special forest products from someone else's land. We are not persuaded, however, that the legislature intended the term to mean the entirety of the landowner's land, as defendant proposes, and not any smaller portion of the landowner's land or a place on the landowner's land. The state points out that the legislature chose to define the offense broadly as removal "from a place" rather than "from the landowner's land." The fact that the legislature chose the generic term "place," rather than a more specific term indicates that the legislature intended the term to have a broad meaning.
Moreover, defendant's theory-that harvest means to simply collect things while on the landowner's land while removal means to completely remove the product from a place, i.e. , from the landowner's land-contradicts a plain reading of the text of the statute. The clause at issue ("from a place") modifies both "remove" and "harvest." ORS 164.813(2) also prohibits harvesting-which includes "otherwise removing"-special forest products "from a place." Under ORS 164.813(2), it is a crime to harvest or remove a special forest product "from a place."
Turning to defendant's next argument, defendant employs the rule against surplusage in support of his two proposed meanings for the word "remove." Defendant argues that there would be no need for the legislature to include *383 "remove" as a separate element of the offense under ORS 164.813(2) if "remove" also meant to harvest in a particular way under ORS 164.813(1)(a). As a general rule, defendant is correct that "we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." State v. Stamper , 197 Or. App. 413, 418, 106 P.3d 172, rev. den. , 339 Or. 230, 119 P.3d 790 (2005). As we have previously noted, however, "in legal drafting, redundancy is a fairly common phenomenon." Friends of Yamhill County v. Yamhill County , 229 Or. App. 188, 195, 211 P.3d 297 (2009). Moreover, "the general assumption of consistency counsels us to assume that the legislature intended the same word to have the same meaning throughout related statutes unless something in the text or context of the statute suggests a contrary intention." Village at Main Street Phase II v. Dept. of Rev. , 356 Or. 164, 175, 339 P.3d 428 (2014). We conclude therefore that there is no meaningful distinction between "remove" as it appears in ORS 164.813(2) and "otherwise removing" as it appears in ORS 164.813(1)(a).
We recognize that, where a statute has "several provisions or particulars[,] such construction is, if possible , to be adopted as will give effect to all." ORS 174.010 (emphasis added). Here, the effect of our interpretation is that the crime of "remov[ing] special forest products from a place" in ORS 164.813(2) is subsumed within the crime of *1124 "harvest[ing] * * * special forest products from a place" based on the definition of "harvest" in ORS 164.813(1)(a)(B), which, as noted, includes "otherwise removing a special forest product from * * * [t]he place or position where it lay." We conclude, however, that that interpretation is compelled by the legislature's use of the terms "remove" and "otherwise removing" in ORS 164.813(2) and ORS 164.813(1)(a), respectively, and the legislature's use of the term "place" in both statutory subsections.
A brief review of legislative history supports our conclusion. In 1993, the legislature amended the forest products theft statute to include "harvest" as an element of the offense; previously, the only illegal conduct under the subsection at issue was to "remove." See Or. Laws 1993, ch. 167, § 1. At the same time, the legislature expanded the definition *384 of "forest products" to include a number of enumerated forest products, such as wild edible mushrooms, cedar salvage, certain ornamental trees and shrubs, and certain types of bark and foliage.[1] Compare id. with Or. Laws 1989, ch. 368, § 1. The legislature also added a definition of "harvest" that included certain types of illegal conduct appropriate for the newly identified special forest products, i.e. "cutting, prying, picking, peeling, breaking, pulling, splitting or otherwise removing." Or. Laws 1993, ch. 167, § 1(6)(a). Thus, even though the definition of "harvest" may have created some redundancy, our review of the legislative history leads us to the conclusion that the legislature most likely intended to include "otherwise removing" as a catch-all phrase to encompass any other removal activity that the legislature's definition of "harvest" had not specified.
Accordingly, we conclude that the trial court did not err by instructing the jury on the definition of "harvest" because the instruction did not amend, substantively or otherwise, the district attorney's information charging defendant with unlawfully removing a special forest product from a place without permission from the owner of the land. We therefore affirm.
Affirmed.

The legislature has since amended ORS 164.813 to primarily allow the Board of Forestry to define "special forest products." ORS 164.813(1)(b)(A) (" 'Special forest products' means * * * [p]lants, plant parts, fruit, fungi, parts of fungi, rocks or minerals that are identified in State Board of Forestry rules as special forest products."); see also OAR 629-028-0001(9). That amendment, however, does not affect our analysis.