164 September 18, 2014 No. 61

IN THE SUPREME COURT OF THE
STATE OF OREGON

VILLAGE AT MAIN STREET PHASE II, LLC,
*Respondent,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon;
and Clackamas County Assessor,
*Appellants.*
(TC 5054; SC S061133 (Control))

VILLAGE AT MAIN STREET PHASE III, LLC,
*Respondent,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon;
and Clackamas County Assessor,
*Appellants.*
(TC 5055; SC S061137)

VILLAGE RESIDENTIAL, LLC,
*Respondent,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon;
and Clackamas County Assessor,
*Appellants.*
(TC 5056; SC S061138)

VILLAGE RESIDENTIAL, LLC,
*Respondent,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon;
and Clackamas County Assessor,
*Appellants.*
(TC 5057; SC S061139)

En Banc

On appeal from the Oregon Tax Court.*

Argued and submitted January 16, 2014.

Carolyn Alexander, Senior Assistant Attorney General, argued the cause and filed the brief for appellant Department of Revenue. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna Joyce, Solicitor General.

Kathleen J. Rastetter, Senior Assistant County Counsel, filed the briefs for appellant Clackamas County Assessor. With her on the briefs was Stephen L. Madkour, Clackamas County Counsel.

Donald H. Grim, Greene & Markley, PC, Portland, argued the cause and filed the brief for respondents on review.

LANDAU, J.

The limited judgments of the Tax Court are reversed, and the cases are remanded to the Tax Court for further proceedings.

_____
    * Appeals from the Oregon Tax Court, Henry C. Breithaupt, Judge, 20 OTR 524 (2012)

**LANDAU, J.**

In these consolidated property tax appeals, tax-payers challenged the valuation of their real property by the Clackamas County Assessor. In their appeals to the Magistrate Division of the Tax Court, they challenged only the valuation of the improvements on their land, not the valuation of the land itself. The Magistrate Division affirmed. Taxpayers then appealed to the Regular Division of the Tax Court, again challenging only the valuation of their improvements. In the meantime, however, the legislature had enacted ORS 305.287. Under that new statute, even if a taxpayer challenges only one aspect of a property tax assessment, any other party to an "appeal" may challenge other aspects of the assessment as well. Relying on that statute, the county asserted for the first time before the Regular Division of the Tax Court that it had erroneously under-valued taxpayers' land. The Tax Court concluded, however, that challenges before the Regular Division are not "appeals" for the purposes of that statute. *Village at Main Street Phase II v. Dept. of Rev.*, 20 OTR 524 (2012). As a result, the court ruled that the county could not challenge the valuation of taxpayers' land. The issue before us now is whether the Tax Court correctly concluded that ORS 305.287 does not apply to appeals to the Regular Division of the Tax Court. For the reasons that follow, we conclude that the Tax Court erred in ruling that the statute does not apply and that the county may not challenge its own land valuations.

## I.   BACKGROUND

To provide context for the parties' dispute about the meaning of ORS 305.287, we begin with an overview of the property tax appeal process, followed by a brief description of the relevant facts and a summary of the Tax Court's decision.

A.   *The Property Tax Appeal Process*

In Oregon, property taxes are assessed for, among other things, real property, including any improvements on that real property. The taxes—referred to as "ad valorem" taxes—are based on the value of the property and improvements. The state's property tax system largely relies on

county tax assessors to value property subject to taxation, calculate the tax, collect the tax, and distribute the revenue to taxing districts. By law, the county assessor is required to value the land and any improvements separately. ORS 308.215(1)(a)(E), (F) (as renumbered by the legislature in 2012; Or Laws 2012, ch 30, § 1).

A taxpayer who is dissatisfied with the county assessor's valuation may appeal the assessor's decision through four successive levels of review, each of which the statutes refer to as an "appeal."

The first level of review is (in most cases) before a county board of property tax appeals (BOPTA). *See* ORS 309.100 (authorizing taxpayers to appeal to BOPTA); ORS 305.275(3) (party cannot appeal to Tax Court if party can appeal to a BOPTA).[1] The relevant statutes refer to review by the county BOPTA as an "appeal." *See* ORS 305.275(3) (appeal to Magistrate Division is not allowed "[i]f a taxpayer may appeal to the board of property tax appeals"). Indeed, the name of the reviewing tribunal is the "board of property tax *appeals*." ORS 309.020(1)(a) (emphasis added).

A party dissatisfied with a decision of a county BOPTA may seek review by the Tax Court. ORS 305.275(3). The Tax Court, however, consists of two separate divisions: the Magistrate Division and the Regular Division. *See* ORS 305.404 (reference to "Tax Court" in statutes "may include either the regular division or the magistrate division of the Oregon Tax Court, or both, or the judge or judges of the [T]ax [C]ourt or its magistrates or a combination"); ORS 305.498(1) ("The magistrate division is established in the Oregon Tax Court."); *Dept. of Rev. v. Froman*, 14 OTR 543, 546 (1999) ("The Oregon Tax Court is one court with two divisions.").

The Magistrate Division is not a court of record; proceedings before it are informal and are not subject to the rules of evidence. *See* ORS 305.430(1) ("Proceedings before the magistrate division shall not be reported."); ORS

---

[1] Not all property tax appeals go to a BOPTA. A taxpayer dissatisfied with the assessment of primary or secondary industrial property may appeal directly to the Tax Court. ORS 305.403; *see* ORS 309.100 (right to appeal to BOPTA does not include appeals governed by ORS 305.403).

305.501(4)(a) (subject to Tax Court rules, magistrate "is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure," but "may conduct the hearing in any manner that will achieve substantial justice"); *see also Froman*, 14 OTR at 546-47 ("The Magistrate Division is intended by the legislature to be informal and user friendly.").

The Regular Division, in contrast, is a court of record with general jurisdiction. ORS 305.405(1). It has the same powers as a circuit court. ORS 305.405(2), (3). Proceedings before the Regular Division are "original, independent proceedings" that are "tried *** de novo." ORS 305.425(1). The Regular Division is to "consider all properly admitted evidence and reach its own independent conclusions" in any given case. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

Ordinarily, a party seeking review of a county BOPTA decision must first appeal to the Magistrate Division. ORS 305.501(1).[2] The relevant statutes refer to review of a BOPTA decision by the Magistrate Division as an "appeal." ORS 305.275(1), (3) (authorizing "appeal *** to the magistrate division of the Oregon Tax Court"). When a taxpayer appeals a property tax assessment to the Magistrate Division, the Department of Revenue is substituted for the county assessor as a party. ORS 305.501(1).

A party dissatisfied with the decision of the Magistrate Division may then seek review, *de novo*, by filing a complaint in the Regular Division. ORS 305.501(5)(a) (party who is "dissatisfied with a written decision of a magistrate may appeal the decision to the judge of the [T]ax [C]ourt"). The relevant statutes refer to that review, too, as an "appeal." *Id*.

The fourth and final level of review is before the Supreme Court. ORS 305.445. On review before this court,

---

[2] A case may be specially designated to proceed directly to the Regular Division, either by rule or by court order. *See* ORS 305.501(1) (subject to an exception involving mediation, "an appeal to the [T]ax Court shall be heard by a [T]ax [C]ourt magistrate unless specially designated by the [T]ax [C]ourt judge for hearing in the regular division"); TCR 1 C (detailing permissible types of special designations).

the court can review only for errors of law and for the absence of substantial evidence in the record to support the Tax Court's decision. *Id*. The relevant statutes also describe that final review as an "appeal." *Id*. ("exclusive remedy for review" of decision of Tax Court "shall be by appeal to the Supreme Court").

B.   *The* Nepom *Rule, Ballot Measure 50, and ORS 305.287*

Because an assessment entails separate valuation of both the land and the improvements, a taxpayer seeking review of an assessment is entitled to challenge the valuation of either of those components, or both of them. In *Nepom v. Dept. of Rev.*, 272 Or 249, 256, 536 P2d 496 (1975), this court held that, if a taxpayer challenged the valuation of only one component—either the land or the improvements—the sole issue before the reviewing body was the valuation of that component. Thus, for example, if a taxpayer challenged the value of the improvements, arguing that they were too high, the county assessor could not seek to offset any drop in that valuation by showing that the land had been valued too low. *See id.* ("We conclude that plaintiff was entitled to challenge only the value of the improvements \*\*\*; however, as the value of the land was not an issue in the case, the Tax Court acted improperly in adding the reduction in the improvement values to the land.").

Under the law in effect at the time, *Nepom* had limited practical effect. If a taxpayer challenged only one component of a real property assessment, and if the county assessor believed that the other component had been assessed in error, the assessor could adjust the value of that other component the following year. In 1997, however, the voters approved Ballot Measure 50, which amended the Oregon Constitution, creating a new provision, Article XI, section 11.

Among many other things, Measure 50 and its implementing statutes reduced the assessed value of property to 10 percent below 1995 values. Or Const, Art XI, § 11(1)(a). For future years, the value of property for tax purposes cannot exceed three percent more than what it was in the preceding year. Or Const, Art XI, § 11(1)(b); ORS 308.146(2). The combined effect of *Nepom* and Measure 50 was to curb the assessor's ability to adjust any error in

valuation of any assessment components that a taxpayer elected not to challenge. *See generally [Flavorland Foods v. Washington County Assessor](link)*, 334 Or 562, 565, 54 P3d 582 (2002) (summarizing effects of Measure 50).

In 2011, the legislature enacted ORS 305.287 to address that combined effect of *Nepom* and Measure 50. That statute provides:

> "Whenever a party appeals the real market value of one or more components of a property tax account, any other party to the appeal may seek a determination from the body or tribunal of the total real market value of the property tax account, the real market value of any or all of the other components of the account, or both."

The legislature provided that the new statute took effect "on the 91st day after the date on which the 2011 session of the Seventy-sixth Legislative Assembly adjourns sine die." Or Laws 2011, ch 397, § 3. That led to an effective date of September 29, 2011.

C.  *Facts*

With that background, we turn to the undisputed facts. The taxpayers in this case are Village at Main Street Phase II, LLC; Village at Main Street Phase III, LLC; and Village Residential, LLC. They own apartment rental properties in Clackamas County. The Clackamas County Assessor assessed those properties for property tax purposes.

Taxpayers disagreed with the 2006, 2007, and 2008 real market values of two tax lots, and the 2007 and 2008 real market values of one additional tax lot. Accordingly, taxpayers appealed the assessor's assessments to the county BOPTA. The county BOPTA affirmed.

Taxpayers then appealed the BOPTA's decision to the Magistrate Division of the Tax Court. They challenged only the valuation of the improvements, not the land. At the time, the *Nepom* rule applied, so the sole issue before the Magistrate Division was the valuation of the improvements. While taxpayers' appeal was still pending in the Magistrate Division, however, the legislature enacted ORS 305.287.

The Magistrate Division rendered its decisions in these appeals on December 13, 2011. Taxpayers, dissatisfied

with the result, then appealed to the Regular Division of the Tax Court. They did so by filing four separate complaints— one challenging the valuation of improvements owned by Village at Main Street Phase II, a second challenging the valuation of improvements owned by Village at Main Street Phase III, and the remaining two challenging the valuation of improvements on two different tax lots owned by Village Residential. None of the four complaints challenged the valuation of taxpayers' land. The Department of Revenue filed answers, and the county assessor intervened in all four cases.

The assessor, however, had come to believe that it had undervalued taxpayers' land. Believing that the newly enacted ORS 305.287 authorized it to raise the issue, the assessor moved for preliminary rulings in all four cases, contending that taxpayers' appeal to the Regular Division constituted an "appeal" under ORS 305.287 that would allow the assessor to correct the land valuations. Taxpayers countered with motions seeking preliminary rulings that ORS 305.287 did not apply.

D.    *The Tax Court Decision*

The Tax Court rejected the assessor's arguments and granted taxpayers' motions for a preliminary ruling. *Village at Main Street*, 20 OTR 524. The Tax Court acknowledged that ORS 305.287 applies "whenever a party appeals" one or more components of a property tax assessment and that the relevant statutes refer to each of the four levels of review of such an assessment as "appeals." The court nevertheless concluded that the statute applies to only one of those four levels of review, namely, appeals to the Magistrate Division of the Tax Court. The court concluded that, based on various contextual indicia of legislative intent, ORS 305.287 does not apply to appeals to a county BOPTA, the Regular Division of the Tax Court, or the Oregon Supreme Court.

Beginning with appeals to a county BOPTA, the Tax Court noted that, under existing statutes, "[t]he appealing party can only be the taxpayer." 20 OTR at 529. Because "[t]he appeal referred to in ORS 305.287 is one that may be made or taken by either party to a property tax dispute," the

court concluded, the statute must be understood not to apply to appeals to a BOPTA. 20 OTR at 530.

In contrast, the Tax Court found no conflict between ORS 305.287 and review by the Magistrate Division. Indeed, the court observed, under Department of Revenue rules, OAR 150-309.110(1), the county BOPTA order appealed to the Magistrate Division must separately state the values of each component of the property tax account, regardless of whether the taxpayer challenged both components.

As for review of an assessment by the Regular Division, the Tax Court concluded that its own review mechanisms and ORS 305.287 do conflict. The court acknowledged that appeals to the Regular Division are described in the statutes as "original," "independent," and "de novo." But it then observed that "nothing in the statutes prior to the addition of ORS 305.287 suggested that if a claim for relief had not been made for a component of an account to the Magistrate Division[,] such a claim could be made for the first time to the Regular Division." 20 OTR at 530. To the contrary, the Tax Court noted, ORS 305.501(1) provides that, ordinarily, tax appeals should first go to the Magistrate Division before being directed at the Regular Division. Accordingly, the Tax Court concluded, "[t]he mechanisms of the Regular Division and ORS 305.287 do not fit together well." 20 OTR at 530. The Tax Court further noted that the statutory time frames for filing appeals also do not fit well with the application of ORS 305.287 to the Regular Division. According to the Tax Court, because ORS 305.280(4) gives only 30 days for a party to appeal a decision from a county BOPTA, applying ORS 305.287 to the Regular Division would, in effect, authorize parties to appeal beyond that statutory deadline. *See* 20 OTR at 533.

Turning to review by the Oregon Supreme Court, the Tax Court noted that pertinent statutes define such review as very limited in scope, extending only to errors of law or the absence of substantial evidence to support findings of fact made by the Tax Court. Applying of ORS 305.287 to Supreme Court review, the court said, "would cause serious statutory conflicts," because it would require the Supreme Court to make factual determinations not

previously determined by the Tax Court, contrary to the Supreme Court's limited review authority. 20 OTR at 530-31.

After thus concluding that ORS 305.287 applies only to appeals to the Magistrate Division, the Tax Court observed that the statute did not become effective until after taxpayers sought review at that level in this case. The court then posed the question whether ORS 305.287 nevertheless applied retroactively to taxpayers' appeal to the Magistrate Division. The court summarily concluded that, in the absence of any wording in ORS 305.287 suggesting that it applies retroactively, the statute does not apply to these proceedings at all. 20 OTR at 534-35.

After the Tax Court entered its order granting taxpayers' motions for a preliminary ruling, the assessor again raised the ORS 305.287 issue by moving to file amended answers and counterclaims. The court entered limited judgments denying the assessor leave to file amended answers and counterclaims. These appeals followed. *See* ORS 305.445 (appeal to Supreme Court is "sole and exclusive remedy" for review of Tax Court decision).

## II.   ANALYSIS

On appeal, the department and the assessor contend that the Tax Court erred in concluding that ORS 305.287 applies only to proceedings before the Magistrate Division. According to the department and the assessor, the statute applies to all levels of review, save review by this court. Taxpayers maintain that the Tax Court correctly concluded that ORS 305.287 applied only to Magistrate Division appeals. In the alternative, taxpayers contend that, even assuming that the statute applies to appeals to the Regular Division, it does not apply in this particular case, because there is no indication that the legislature intended the statute to apply retroactively.

A.   *Whether ORS 305.287 Applies Only to Appeals to the Magistrate Division*

The parties' contentions require us to construe ORS 305.287. In performing that task, we are guided by the interpretive principles of *PGE v. Bureau of Labor and*

*Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). That is, we seek to determine the meaning of the statute that the legislature most likely intended by examining the text in context, any relevant legislative history, and, if necessary, pertinent canons of construction. *Id.* at 171-72.

We begin with the text. For convenience, we repeat it here:

> "Whenever a party appeals the real market value of one or more components of a property tax account, any other party to the appeal may seek a determination from the body or tribunal of the total real market value of the property tax account, the real market value of any or all of the other components of the account, or both."

ORS 305.287. For at least three reasons, that wording strongly suggests that the legislature had in mind more than one level of appeal.

First, ORS 305.287 states that it applies "whenever" a party appeals. As used in that statute, the word functions as a subordinating conjunction, which introduces the dependent clause that begins the sentence and connects it to the balance. *See generally Fowler's Modern English Usage* 171 (3d ed 1996) (explaining subordinating conjunctions). Used in that sense, "whenever" ordinarily means "at any or all times that : in any or every instance in which." *Webster's Third New Int'l Dictionary* 2602 (unabridged ed 2002); *see also American Heritage Dictionary of the English Language* 1971 (5th ed 2011) ("at whatever time that : * * * every time that").[3] Thus, the ordinary meaning of the statutory term contemplates more than one instance in which a relevant event—in this case, an appeal—occurs.

Second, the statute refers broadly to an "appeal" of an assessment. As we have noted, the relevant statutes setting out the four levels of review of a property tax assessment

---

[3] The Tax Court observed that the word "whenever" has a more limited meaning when used as an adverb. *See Webster's* at 2602 (defining adverb "whenever" as "at whatever time : no matter when"). But, as we have noted, in ORS 305.287, the word does not function as an adverb. And, in any event, it is not so clear to us that the definition of the adverb is quite as limited as the Tax Court suggested. "[A]t whatever time" and "no matter when" do not necessarily imply only a single event.

refer to each of those four levels as "appeals." Under the circumstances, the general assumption of consistency counsels us to assume that the legislature intended the same word to have the same meaning throughout related statutes unless something in the text or context of the statute suggests a contrary intention. *See, e.g.*, *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011) ("[I]n the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently."). There may well be indications in related statutes suggesting that the legislature did not intend ORS 305.287 to apply to all four levels of appeal. Still, nothing in the text of that statute itself suggests that it applies to only one such level.

Third, ORS 305.287 refers to appeals to a "body or tribunal," suggesting that the legislature understood it to apply to more than one level of appeal and to different types of appellate entities. Indeed, if the legislature had intended to limit the application of ORS 305.287 to a single entity, the broad phrasing of the statute in terms of an appeal to a "body or tribunal" would serve no apparent purpose. *See Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) ("As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions.").

On the face of the statute, then, ORS 305.287 would appear to apply to any property tax appeal. Nothing in its wording suggests that it is limited to one level of appeal.

The legislative history of ORS 305.287 on the issue is sketchy, but pertinent portions appear to confirm our reading of the statute. During the floor debate on the bill that became ORS 305.287, Representative Barnhart—the carrier of the bill—explained that, under then-current law, a party could appeal one component of a real property assessment through "various appeal levels." Audio Recording, House Floor Debate, House Bill (HB) 2572, May 16, 2011, at 39:46-42:05 (statement of Rep Phil Barnhart). That limited, he explained, what the "various appeals bodies" could consider. *Id*. Under Measure 50, however, that meant that, if a taxpayer challenged only one component of the assessment, an error in the other component could not be corrected

later. *Id*. He said that the bill was intended to remedy that problem and prevent under-evaluations that could not later be corrected. *Id*. Thus, Representative Barnhart explained that what is now ORS 305.287 was intended to remedy the fact that the "various appeal levels" and "various appeals bodies" were precluded from addressing certain errors in property assessments.

Before the Senate Committee on Finance and Revenue, Representative Barnhart similarly explained that, under then-current law, if a taxpayer appealed one component of an assessment, Measure 50 would preclude reassessment of the other component. Audio Recording, Senate Committee on Finance and Revenue, HB 2572, May 25, 2011, at 36:04-38:22 (statement of Rep Phil Barnhart). The bill before the committee, he explained, was intended to allow "the local appeals board and the tax court" to consider all components of a tax account, not just the one that the taxpayer challenges. *Id*.

During the same hearing, the policy coordinator for the Association of Oregon Counties submitted a statement to the committee asserting that the purpose of the bill was to permit "the magistrate or judge in a property tax appeal to ensure the correct final valuation of property in the process of making the component value adjustment requested by the taxpayer." Testimony, Senate Finance and Revenue Committee, HB 2572, May 25, 2011, Ex DD (statement of Gill Riddell, Association of Oregon Counties).

Thus, it appears that the legislature was aware that, at the least, ORS 305.287 would apply to "various appeals bodies," including "the local appeals board" and "the magistrate or judge" in the Tax Court. Nothing in the legislative history suggests that ORS 305.287 was intended to apply to only one level of property tax appeal, much less that the sole level of "appeal" for the purposes of that statute is to the Magistrate Division of the Tax Court.

That does not necessarily foreclose a conclusion that the statute nevertheless has a more limited application. Analysis of other related statutes and other evidence of legislative intent may reveal that the legislature did not intend ORS 305.287 to apply to all four levels of property tax

appeals. We turn, then, to each of the four levels of property tax review to determine whether there is evidence that the legislature intended such a more limited application.

### 1. *County BOPTA appeals*

We begin with the first level of appeal, to a county BOPTA. As we have noted, the very name of the board—a board of property tax *appeals*—indicates that the legislature understood that review by a county BOPTA is, at least in some sense, an "appeal." Moreover, as we have also noted, ORS 305.287 refers to appeals to a "body or tribunal." A county BOPTA certainly qualifies as one or the other. Finally, as we have also noted, the legislative history appears to confirm that the legislature understood that the statute applied to appeals to, among other things, "the local appeals board."

The Tax Court nevertheless concluded that ORS 305.287 does not apply to appeals to a county BOPTA for two reasons. We find neither reason persuasive.

The Tax Court first noted that applying ORS 305.287 to appeals to a county BOPTA would introduce a conflict among statutes. The court noted that relevant statutes permit only a taxpayer to appeal to a county BOPTA. The court then observed that ORS 305.287 is not limited to cases in which the taxpayer appeals. "Accordingly," the tax court concluded, "the appeal referred to in ORS 305.287 cannot be the 'one-sided' appeal to a BOPTA." 20 OTR at 530. The argument does not follow, however. ORS 305.287 merely states that "[w]henever *a party* appeals" (emphasis added) the value of real property, other parties may seek a determination of other components of the valuation the appealing party may not be challenging. As we have noted, the statute is written in terms that apply to multiple levels of appeal. The fact that the generic term "a party" is not limited to taxpayers does not mean that the statute cannot apply to taxpayer appeals to a BOPTA. There is no inconsistency between ORS 305.287 and the limitation that only taxpayers may initiate an appeal.

The Tax Court next observed that, under ORS 309.026(2), a county BOPTA may entertain petitions to reduce

a valuation, but not increase it. Nothing in ORS chapter 309, however, limits a county BOPTA's authority to increase a component of a valuation, so long as the total value does not exceed the current assessment. Again, there is no inconsistency between ORS 305.287 and the statutory authority of a county BOPTA.

2. *Appeals to the Magistrate Division of the Tax Court*

We turn to the second level of property tax appeals—the Magistrate Division of the Tax Court. The Tax Court concluded that ORS 305.287 applies to appeals to the Magistrate Division, and all parties agree. So do we.

As we have noted, relevant statutes refer to review by the Magistrate Division as an "appeal." Moreover, ORS 305.287 applies to appeals to a "body or tribunal," and the Magistrate Division plainly qualifies. The parties have not identified any text or context that otherwise suggests that ORS 305.287 should not apply to the Magistrate Division, and we are aware of none. To the contrary, the legislative history suggests that the legislature understood the statute to apply to proceedings before the Magistrate Division. *See* Testimony, Senate Finance and Revenue Committee, HB 2572, May 25, 2011, Ex DD (statement of Gil Riddell, Association of Oregon Counties) (stating that bill "permits *the magistrate* or judge in a property tax appeal to ensure the correct final valuation of property") (emphasis added).

3. *Appeals to the Regular Division of the Tax Court*

We next address appeals to the Regular Division of the Tax Court, the third level of property tax appeals. As is true with appeals to both the county BOPTA and the Magistrate Division, ORS 305.287 on its face appears also to apply to appeals to the Regular Division. The legislature has labeled Regular Division review as an "appeal." And the Regular Division certainly constitutes a "body or tribunal." Moreover, as we have just noted, the legislative history suggests that the legislature understood that the statute would apply to the "magistrate *or judge* in a property tax appeal." Testimony, Senate Finance and Revenue Committee, HB 2572, May 25, 2011, Ex DD (statement of Gil Riddell, Association of Oregon Counties) (emphasis added).

The Tax Court nevertheless concluded that "[t]he mechanisms of the Regular Division and ORS 305.287 do not fit together well." 20 OTR at 530. In support of that assertion, the court cited ORS 305.501(1), which the court read to state a general principle that Tax Court appeals must first be heard by the Magistrate Division before going to the Regular Division. We are not persuaded.

ORS 305.501(1) provides that, if a case has not been assigned to mediation, "an appeal to the [T]ax [C]ourt shall be heard by a [T]ax [C]ourt magistrate *unless specially designated by the Tax Court judge for hearing in the regular division*." (Emphasis added.) Thus, that statute itself expressly allows the Tax Court to permit tax appeals to be heard by the Regular Division in the first instance, without further legislative limitation. And, in fact, Tax Court rules provide that the Tax Court may designate by rule entire categories of cases to come directly to the Regular Division or may authorize by order individual appeals to be heard by the Regular Division without having gone to the Magistrate Division. TCR 1 C. Given that the statute already contemplates exceptions to the notion that all Tax Court appeals must originate in the Magistrate Division, it is not clear to us why applying ORS 305.287 to the Regular Division is incompatible with the existing statutory scheme.

To the contrary, a review of the statutes defining the relationship between the Magistrate Division and the Regular Division suggests that allowing a new issue to be raised on appeal to the Regular Division is consistent with the role of the Regular Division. As we have noted, proceedings before the Magistrate Division are informal, not reported, and not subject to the rules of evidence. *See* ORS 305.430(1) (Magistrate Division proceedings not reported); ORS 305.501(4)(a) (Magistrate Division proceedings generally not subject to rules of evidence). Such proceedings do not produce a "record" in the ordinary sense that the Regular Division later reviews.

In contrast, Regular Division proceedings are "original, independent proceedings." ORS 305.425(1). They do not entail reviewing a record created by the Magistrate Division. Rather, they entail the creation of a new record, *de novo*.

*See id*. Any findings of fact by the Magistrate Division—and the evidence on which it based those findings—do not bind the Regular Division in any way. *See [White I v. Dept. of Rev.](#)*, 19 OTR 47, 49-50 (2006) (because ORS 305.425(1) requires Regular Division proceedings to be original, independent, and *de novo*, the Regular Division "cannot rely on factual statements contained in the magistrate's decision as proof of their truth"); *[Dept. of Rev. v. Guardian Management Corp.](#)*, 16 OTR 17, 20 (2002) ("[T]he mandate of *** [ORS 305.425(1)] is such that no party can be compelled to accept any record created in the Magistrate Division.").

That combination of statutory directives—requiring informal proceedings before the Magistrate Division, while requiring Regular Division proceedings to be original, independent, and *de novo*—means that the parties before the Regular Division are not limited to the evidence or the arguments that they presented in the Magistrate Division. The Tax Court itself has recognized as much, observing that its statutory duty to conduct *de novo* review of Magistrate Division decisions allows litigants to "start over with a clean slate in terms of arguments made and evidence presented." *[Grant Cty. Assessor v. Dayville Public Sch. Dist. 16J](#)*, 20 OTR 240, 243 (2011). Or, as the Tax Court has stated on *de novo* review of a decision of the Department of Revenue:

> "'If either the taxpayer or assessor can improve his case, as he moves from successive administrative hearings to the court, by using new approaches (justified by further study) or offering stronger comparable sales (discovered through greater diligence), these changes in presentation are permitted under the statutory provision for a presentation "*de novo*," so long as they aid in reaching the goal of true cash value.'"

*Clark v. Dept. of Rev.*, 14 OTR 221, 224 (1997) (quoting *Price v. Dept. of Rev.*, 7 OTR 18, 23 (1977)).

The Tax Court also expressed concern in this case that applying ORS 305.287 to the Regular Division would permit parties, in effect, to avoid the 30-day statutory limitation for appealing from county BOPTAs. Again, we are not persuaded.

The Tax Court's reasoning appears to assume that ORS 305.287 independently authorizes an *appeal*, when the statute plainly does not do that. As we have explained, ORS 305.287 states that, whenever a party appeals a real property valuation and challenges only one component of the valuation, other parties may "seek a determination" as to other components. The statute neither requires nor authorizes other parties to file a separate notice of appeal to obtain that determination. Moreover, ORS 305.280(4) spells out a deadline for an appellant to file an appeal. It does not affect a respondent's time to respond to that appeal. Indeed, if the Tax Court's reading of ORS 305.287 were correct, then even in the Magistrate Division—where everyone agrees that ORS 305.287 applies—an appellant could foreclose a respondent from invoking that statute by the simple expedient of filing the notice of appeal on the 30th day, leaving no time for the responding party to raise new issues.

In short, ORS 305.287 applies to the Regular Division, which is capable of conducting any and all necessary factfinding to address a new issue raised pursuant to that statute.

4. *Appeals to the Oregon Supreme Court*

The final level of property tax review is an appeal to this court. The Tax Court concluded that ORS 305.287 does not apply to such appeals, and the parties agree. Once again, so do we.

On its face, ORS 305.287 would seem to apply to proceedings before this court as well. As was true for the Magistrate Division and the Regular Division, this court is a "body or tribunal," and the legislature designated the proceedings before this court as an "appeal." Other relevant statutes, however, make clear that the legislature did not intend ORS 305.287 to apply to appeals from the Regular Division to the Supreme Court.

As we have noted, this court's review authority on appeal from the Regular Division is limited. ORS 305.445 states in part that "the scope of review of either a decision or order of the [T]ax [C]ourt judge shall be limited to errors or questions of law or lack of substantial evidence in the record

to support the [T]ax [C]ourt's decision or order." The legislature thus has directed this court not to resolve new questions of fact in those appeals.

Furthermore, the legislature's decision to limit this court's review authority was deliberate. Before 1997, this court reviewed decisions of the Tax Court *de novo*. In 1995, the legislature amended the statute defining this court's review authority by eliminating *de novo* review and substituting the current, more limited scope of review. *See* Or Laws 1995, ch 650, § 25 (establishing present scope of review); *Piedmont Plaza Investors v. Dept. of Rev.*, 331 Or 585, 588 n 1, 18 P3d 1092 (2001) (noting then-recent change to scope of review that became effective in 1997, but using prior *de novo* standard applicable to that case).

This court could not adhere to that limited scope of review if parties could raise new valuation issues under ORS 305.287 for the first time on appeal from decisions of the Tax Court. The value of a component of real property poses a question of fact. *See Brooks Resources Corp. v. Dept. of Rev.*, 286 Or 499, 503-04, 595 P2d 1358 (1979) ("The appropriateness of a particular valuation method or combination of methods is not determined by fixed principles of law, but is a factual determination that depends on the record developed in each case."). Thus, to decide a new valuation issue under ORS 305.287, this court necessarily would have to engage in original factfinding. That sort of original factfinding would be directly contrary to the scope of review prescribed in ORS 305.445.

We are left with a choice between either reading ORS 305.287 to apply to appeals to a body or tribunal other than the Oregon Supreme Court or concluding that the statute impliedly repealed the limitations on this court's review authority under ORS 305.445. Such implied repeals are not favored in the law. *See Arken v. City of Portland*, 351 Or 113, 137, 263 P3d 975 (2011) (noting that "repeal of a statutory provision by mere implication is disfavored"). We therefore conclude that ORS 305.287 does not apply to appeals to this court.

B.	*Whether ORS 305.287 Applies to This Case*

Taxpayers urge that, even if ORS 305.287 applies to appeals to the Regular Division of the Tax Court, the

statute should not be applied to them in this case. In taxpayers' view, applying the statute to them in this case would amount to retroactive application of the statute in the absence of any indication that the legislature intended the statute to apply in that way. As taxpayers see it, applying ORS 305.287 to them constitutes "retroactive" application because they initiated their appeals before the statute went into effect. The fact that they initiated their appeals to the Regular Division of the Tax Court *after* the statute went into effect, they argue, is of no moment, because those appeals involved the same "matter" as the previous appeals.

Whether a statute applies retroactively is a question of legislative intent, determined by the usual tools of statutory construction. *See [Delta Air Lines, Inc. v. Dept. of Rev.](),* 328 Or 596, 601, 984 P2d 836 (1999) (whether a statute applies retroactively is determined by applying rules of statutory construction).[4] But, before we would need to address whether the legislature intended ORS 305.287 to be applied retroactively, we must determine whether applying it to this case would, in fact, constitute "retroactive" application of the statute.

Determining what constitutes "retroactive" application of a statute can be a difficult task because of the notoriously slippery nature of the notion of "retroactivity." As Justice Linde observed in *Whipple v. Howser*, 291 Or 475, 488-89, 632 P2d 782 (1981) (Linde, J., concurring):

"'Retroactivity' itself is a deceptively simple word for a complex set of problems. In real time, all laws can operate only prospectively, prescribing legal consequences after

---

[4] Citing *Hoffart v. Lindquist*, 182 Or 611, 620, 189 P2d 592 (1948), and *Kempf v. Carpenters and Joiners Union*, 229 Or 337, 341, 367 P2d 436 (1961), taxpayers contend that there is a presumption that statutes apply prospectively. That is not an accurate statement of current law. As more recent cases make clear, the controlling question is one of legislative intent, determined not by the invocation of presumptions but by the usual rules of statutory construction. *See, e.g.*, *Whipple v. Howser*, 291 Or 475, 480-81, 632 P2d 782 (1981). In the absence of more direct evidence of legislative intent, the court may resort to various "rules" or "maxims" of construction pertaining to retroactivity—for example, the rule that substantive statutes ordinarily apply prospectively only, while procedural statutes apply retroactively. *Id.* at 481. But there is no presumption against retroactivity *per se*. *See Delehant v. Board on Police Standards and Training*, 317 Or 273, 278, 855 P2d 1088 (1993) ("Retroactive application of a rule is not automatically impermissible, however. The question is one of intent ***.").

their enactment; they cannot change the past. On the other hand, all new laws operate upon a state of affairs formed to some extent by past events."

*See also Jill E. Fisch, Retroactivity and Legal Change: An Equilibrium Approach*, 110 Harv L Rev 1055, 1072 (1997) (noting that "formulating a precise definition of retroactivity is a difficult enterprise"); W. David Slawson, *Constitutional and Legislative Considerations in Retroactive Lawmaking*, 48 Cal L Rev 216, 217 (1960) ("Enough has already been said to show that the concept of retroactivity has not been precisely analyzed in the literature to date and to suggest, perhaps, that the concept is not capable of precise analysis.").

"Retroactive" legislation often refers to laws that "affect[] existing legal rights or obligations arising out of past transactions or occurrences." *E.g.*, *U.S. Bancorp v. Dept. of Rev.*, 337 Or 625, 636-37, 103 P3d 85 (2004) (so stating). But whether a law "affects" existing rights or obligations depends on the nature of the law at issue; there is no bright-line test. As this court explained in *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 351 Or 255, 262, 266 P3d 61 (2011), "'[r]esponsible attention to the significance to be attached to past events cannot be compressed into a simple formula. Too many different past events and too many potential legal consequences are relevant for different kinds of laws' to announce a single formula" that would apply to all statutes. (Alteration in original; quoting *Whipple*, 291 Or at 489 (Linde, J., concurring).)

With that in mind, we turn to the statute at issue in this case. As we have noted, ORS 305.287 is directed at issues that parties may raise "[w]henever a party appeals the real market value of one or more components of a property tax account." We have just concluded that the "appeals" to which the statute applies include appeals to the Regular Division of the Tax Court. In this case, taxpayers appealed to the Regular Division of the Tax Court *after* ORS 305.287 went into effect. Thus, the application of that statute to their appeal is not retroactive.

Taxpayers object that the operative "appeal," for purposes of retroactivity analysis, is their appeal to the

Magistrate Division, which occurred *before* ORS 305.287 went into effect. Taxpayers reason that their appeal to the Regular Division was a part of the same "matter" that was appealed to the Magistrate Division, which is but a different division of a single Tax Court.

The objection is not well taken. ORS 305.287 applies to "appeals," not to "matters." As we have explained, an appeal to the Regular Division is entirely separate from an appeal to the Magistrate Division. Indeed, an appeal to the Regular Division is "original" and "independent" of prior proceedings or appeals and is "tried * * * de novo." ORS 305.425(1).

Accordingly, we conclude that ORS 305.287 applies to appeals filed after that statute's effective date. Because we have already determined that ORS 305.287 applies to appeals to the Regular Division, and because taxpayers appealed to the Regular Division after that statute became effective, ORS 305.287 applies to these appeals. The Tax Court erred in concluding otherwise.

The limited judgments of the Tax Court are reversed, and the cases are remanded to the Tax Court for further proceedings.