Submitted on the briefs May 5, judgment of Tax Court affirmed
September 30, 2021

Rami KHALAF,
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent.*

(TC 5347) (SC S067721)

495 P3d 1258

Taxpayer was in the business of buying products for customers in the United Arab Emirates, primarily all-terrain vehicles. He sought to claim certain business deductions on his 2013 income tax return, including depreciation for a dune buggy that taxpayer had purchased for use as a demonstration model, and a business expense deduction for payments made to his sisters to rent an apartment and auto for his trips to Dubai. The Department of Revenue (department) rejected those deductions. The Tax Court agreed with the department, holding that the dune buggy was not deductible because it counted as inventory, and that the travel expenses were not deductible, both because they were not sufficiently documented as travel expenses and because taxpayer had failed to rebut the presumption that they were nondeductible gifts to family members. Taxpayer appealed to the Oregon Supreme Court. *Held*: (1) In reviewing whether a Tax Court's finding of fact is supported by "substantial evidence," the Supreme Court considers whether the record, viewed as a whole, would permit a reasonable person to make that finding; (2) the Tax Court's determination that the dune buggy was inventory, and hence not depreciable, was a finding of fact supported by substantial evidence; and (3) the Tax Court's determination that taxpayer had failed to rebut the presumption of a gift to his sisters was a finding of fact supported by substantial evidence, and so the transfers could not be deducted as a business expense.

The judgment of the Tax Court is affirmed.

En Banc

On appeal from the Oregon Tax Court.*

Robert T. Manicke, Judge.

Rami Khalaf filed the brief *pro se.*

_____

\* Unpublished decision issued February 5, 2020.

Erin K. Galli, Assistant Attorney General, Salem, filed the brief for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General; Benjamin Gutman, Solicitor General; and Kristen Gallino, Assistant Attorney General.

NELSON, J.

The judgment of the Tax Court is affirmed.

**NELSON, J.**

Rami Khalaf (taxpayer) was in the business of buying products for customers in the United Arab Emirates, primarily all-terrain vehicles (ATVs). He sought to claim certain business deductions on his 2013 income tax return. As relevant here, those included travel expenses that taxpayer had incurred on trips to the Emirates, and the cost of a dune buggy that taxpayer had purchased for use as a demonstration model. The Department of Revenue (department) rejected those deductions. The Tax Court agreed with the department on those points: It held that the travel expenses were not deductible, because they were not sufficiently documented, and that the dune buggy was not deductible because it counted as inventory. *Khalaf v. Dept. of Rev.*, TC 5347 (Or Tax, Feb 5, 2020). Taxpayer has appealed. We affirm.

## I.  FACTS

A.  *General*

Taxpayer operated a sole proprietorship under the business name "Khalaf Motors." Taxpayer's business was "facilitating" sales between businesses in the United States and customers in the Emirates. In general, an Emirates customer would contact taxpayer seeking a particular item. Taxpayer would locate the item and negotiate the purchase price, including shipping. The customer would wire funds for purchase, and then taxpayer would ship the item. The primary sale items were ATVs—often referred to as dune buggies.

From this point, we will separately set out the relevant facts as to the two claimed deductions, and the Tax Court's rulings on each claim.

B.  *Dune Buggy*

In 2013, taxpayer purchased a dune buggy like the ones he was selling to his customers in the Emirates. That dune buggy was intended to be a "prototype and demonstration unit" to stimulate his sales. Taxpayer used the dune buggy for advertising purposes, and he deliberately kept the mileage low. Later, taxpayer unsuccessfully tried to sell the dune buggy on Craigslist.

In his 2013 tax return, taxpayer claimed a deduction of $7,280 in depreciation on that dune buggy. The department denied the deduction on the ground that it was a demo/floor model, and thus inventory, which was not depreciable.

Taxpayer challenged the department's denial before the Tax Court. The court agreed with the department and concluded that the vehicle was not a depreciable business asset. Inventory, the court explained, does not qualify for a depreciation deduction. Whether an asset is inventory is a factual question on which taxpayer had the burden of proof. Demonstration units are generally inventory and not depreciable. If, however, the dune buggy was being consumed through use in such business activities as transportation, it would be depreciable.

In this case, the court found that the dune buggy constituted inventory. As noted, taxpayer had admitted that it was a demonstration model, that he had kept the mileage low, and that he had later attempted to sell it. Conversely, taxpayer did not show that the dune buggy was being consumed for business purposes (other than as a demonstrator).

The Tax Court also rejected taxpayer's alternative argument that the dune buggy was depreciable as a prototype for research and development. Pursuant to an Internal Revenue Service Treasury Regulation, 26 CFR § 1.174-2(a)(6), "experimental expenditures" excludes expenditures for "[a]dvertising or promotions." As noted, taxpayer had testified that he had bought the dune buggy for promotional purposes and used it for those purposes.

C.   *Business Trips to Emirates*

Taxpayer traveled to the Emirates three times in 2013: on or about January 1 to 8; April 10 to May 15; and August 7 to 18.[1] The only travel expenses at issue are payments that taxpayer had made to his sisters related to that

---

[1] On appeal, the department appears to assert that there were only two trips. Our review of the trial transcript, however, shows that the department had conceded that taxpayer made three trips to the Emirates in 2013 and on the dates that taxpayer had claimed. Regardless, neither the exact number of trips nor their dates are necessary to our disposition here.

travel.[2] Specifically, taxpayer claimed a $7,000 deduction for a payment that he allegedly made to rent a vehicle from one sister, and $3,150 for a payment that he allegedly made to rent an apartment in Dubai from another sister.

The department denied the deductions. It did not dispute that taxpayer paid his sisters those amounts in 2013. However, the department concluded that taxpayer had failed to show that those payments were primarily for business purposes.

The Tax Court also agreed with the department on that point. Noting that taxpayer has the burden of proof, the court explained that a taxpayer is not permitted to claim a deduction based only on his or her own testimony. The taxpayer must substantiate the deduction with additional evidence: specifically, detailed and contemporaneous records.

The Tax Court then turned to the substantiating evidence submitted by taxpayer. As an initial matter, the court excluded from the evidence two receipts that taxpayer had offered from his sisters (originals in Arabic and with English translations). The receipts stated that the payments were for taxpayer's business. The court concluded that the receipts were hearsay and not subject to an exception.

The court then concluded that the remaining evidence was insufficient. Taxpayer's travel log failed to show that the entries had been made at the time the expenses were incurred. Taxpayer failed to introduce any evidence to corroborate his claim that the apartment was used for business purposes, and he did not keep a mileage log documenting his use of the vehicle. The copies of the apartment lease and the rental contract, the court concluded, were insufficient to substantiate his testimony.

Finally, the Tax Court held in the alternative that taxpayer had faced an independent evidentiary burden, because he had made the payments to his sisters. As payments to family members, the court explained, the transfers were presumed to be nondeductible gifts. Taxpayer had not submitted any evidence to show that the amounts that he

---

[2] There were no issues regarding other travel expenses to the Emirates before the Tax Court.

had paid his sisters represented fair market value for the car or the apartment.

## II.   DISCUSSION

A.   *Burden of Proof; Standard of Review*

In the Tax Court, taxpayer—as the party challenging the department's ruling—had the burden to show, by a preponderance of the evidence, that he was entitled to the deduction he claimed. *See* ORS 305.427 (both before Tax Court and on appeal, "the party seeking affirmative relief" has burden of proof by "a preponderance of the evidence"); *Baisch v. Dept. of Rev.*, 316 Or 203, 211, 850 P2d 1109 (1993) ("A taxpayer seeking relief from a decision of the Department denying a deduction bears the burden of showing by a preponderance of the evidence that the deduction is allowable.").

We review the Tax Court's findings to determine whether they are supported by substantial evidence. ORS 305.445 provides that this court's review of a Tax Court decision "shall be limited to * * * lack of substantial evidence in the record to support the tax court's decision or order." We pause briefly to explain that standard.

Although this court has not previously addressed the meaning of "substantial evidence" in the context of Tax Court review, it is a term of art drawn from administrative law. "Substantial evidence" was first applied to Tax Court review by the legislature in 1995, replacing the prior functional directive that this court would review the facts *de novo*. Or Laws 1995, ch 650, § 25; *see Delta Air Lines, Inc. v. Dept. of Rev.*, 328 Or 596, 600-01, 984 P2d 836 (1999) (discussing prior standard and change in law). In 1995, "substantial evidence" review was widely used in review of administrative rulings. ORS 183.482(8)(c) (1995) provided in part, as it does today:

> "The court shall set aside or remand the [agency] order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact *when the record, viewed as a whole, would permit a reasonable person to make that finding.*"

(Emphasis added.)

Because the term "substantial evidence" had a well-established legal meaning when the legislature adopted it, we presume that the legislature intended this court to apply that meaning as the standard to review Tax Court decisions. *See, e.g.*, *Ann Sacks Tile and Stone, Inc. v. Dept. of Rev.*, 352 Or 380, 386, 287 P3d 1062 (2012) ("When the words in a statute have a well-defined legal meaning, we use that meaning in interpreting the statute."). When reviewing the Tax Court's findings of fact, then, we consider whether "the record, viewed as a whole, would permit a reasonable person to make that finding."

We review the Tax Court's conclusions of law for errors of law. ORS 305.445 (Supreme Court reviews Tax Court's legal conclusions for "errors * * * of law"); *see also Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 168-69, 339 P3d 428 (2014) (this court reviews Tax Court decisions only for errors of law or lack of substantial evidence).

In this case, the controlling law is federal, rather than state. ORS 316.007(1) provides that the legislature intended, "insofar as possible," to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals[.]" Pursuant to that statute, "we apply federal tax laws and federal court interpretations of those laws in resolving the issues raised by taxpayer[]." *Miller v. Dept. of Rev.*, 327 Or 129, 135, 958 P2d 833 (1998).

With that background, we now turn to the specific deductions at issue in this matter.

B.  *Dune Buggy Depreciation*

Federal law generally permits a taxpayer to take a deduction for depreciation of "a reasonable allowance for the exhaustion, wear[,] and tear (including a reasonable allowance for obsolescence)" of "property used in the trade or business." 26 USC § 167(a)(1). Taxpayer claimed the deduction for the dune buggy pursuant to 26 USC section 179(a), which permits a taxpayer to "elect (subject to certain limitations) to treat the cost of any 'section 179 property' as a current expense in the year such property is placed in service, rather than depreciating the cost of the property over a number of

years." *Hayden v. Commissioner*, 204 F3d 772, 773 (7th Cir 2000) (footnote omitted).

It is not disputed that, if the legal conditions were met, the dune buggy potentially would be deductible under section 179. However, under treasury regulations issued by the Internal Revenue Service, "[t]he allowance [for depreciation of tangible property] does not apply to inventories or stock in trade[.]" 26 CFR § 1.167(a)-2. The question is whether the dune buggy was inventory.

For purposes of federal law, "inventory" is "property that is held for sale." *Grant Oil Tool Co. v. United States*, 180 Ct Cl 620, 632, 381 F2d 389, 397 (1967) (emphasis omitted); *see Galedrige Const., Inc. v. C.I.R.*, 73 TCM (CCH) 2838, 1997 Tax Ct Memo LEXIS 272, *29 (TC 1997) (same). To determine whether property is inventory, we thus consider "the purpose for which the property is held." *Latimer-Looney Chevrolet, Inc. v. Commissioner*, 19 TC 120, 125 (1952).

In this case, taxpayer is primarily in the business of selling ATVs, and the vehicle at issue is of the type that taxpayer regularly sells: a dune buggy. The Tax Court accordingly looked at analogous federal decisions regarding when automobiles used by an auto dealer are or are not deductible.

Federal law presumes that an automobile is inventory when held by a business that is regularly engaged in the buying and selling of those autos. That presumption can be rebutted, however. As the Fifth Circuit explained, an auto dealer may deduct depreciation on vehicles that had been originally purchased as inventory, if the dealer is consuming the vehicle by using it for business transportation. On the other hand, a vehicle is inventory (and not depreciable) when the auto dealer uses the vehicle to encourage sales of identical vehicles:

> "When an automobile dealer buys new automobiles for sale, but thereafter takes them out of inventory and puts them to the use for which an automobile is intended in the hands of its ultimate consumer, that is, transporting personnel, and commits them over their reasonable useful life to that purpose in the operation of his business, the mere fact that he is in the automobile selling business does not deprive him of the right to depreciate such automobiles over their

useful life in his hands \*\*\*. \*\*\* On the other hand, where such a dealer buys new cars for sale, puts them into inventory, later removes them temporarily to be used by company officials and salesmen whose primary interest is to stimulate sales of all the dealer's cars, including these very cars in issue, we conclude that under the ordinary meaning of the words used in the statute the 'primary' purpose for which the dealer holds the cars during the entire holding by it is for sale to its customers in the ordinary course of its business."

*Duval Motor Co. v. Commissioner*, 264 F2d 548, 551-52 (5th Cir 1959) (footnote omitted). *Cf. Latimer-Looney Chevrolet, Inc.*, 19 TC at 126 (finding that the auto dealer had shown that the automobiles at issue were not inventory).

The Internal Revenue Service has summarized the case law in a revenue ruling that expressly frames the distinction as a presumption:

"A taxpayer engaged in the trade or business of selling motor vehicles is presumed to hold all such vehicles primarily for sale to customers in the ordinary course of the taxpayer's trade or business. To overcome this presumption, it must be clearly shown that the motor vehicle was actually devoted to use in the business of the dealer and that the dealer looks to consumption through use of the vehicle in the ordinary course of business operation to recover the dealer's cost. A vehicle is not property used in the business if it is merely used for demonstration purposes, or temporarily withdrawn from stock-in-trade or inventory for business use."

Rev Rul 75-538, 1975-2 CB 34, 1975 IRB LEXIS 99, \*3.[3]

The Tax Court's finding that the dune buggy was inventory was based on the purpose for which the dune

---

[3] The parties have not addressed the precedential value of revenue rulings. It appears that they are entitled to at least some deference as an agency interpretation of the underlying statutes and rules:

"Although a revenue ruling does not have the force and effect of Treasury Department Regulations, *see* 26 CFR § 601.601(d)(2)(v)(d), it does constitute 'an official interpretation by the Service,' *id.* § 601.601(d)(2)(i)(a). Accordingly, the Supreme Court and virtually all of the Circuits have indicated that revenue rulings are entitled to some degree of deference."

*Telecom USA, Inc. v. United States*, 192 F3d 1068, 1072-73 (DC Cir 1999), *cert den*, 529 US 1123 (2000) (footnote omitted).

buggy was held, and thus it was a finding of fact. Taxpayer does not argue that the Tax Court used an incorrect legal standard; he focuses on the facts regarding the dune buggy and its role in his business. Accordingly, we review the Tax Court's finding for whether it is supported by substantial evidence: that is, whether "the record, viewed as a whole, would permit a reasonable person" to find that the dune buggy was inventory.

Some facts do support taxpayer's position that the dune buggy was not inventory and thus should be depreciable. To begin with, it appears uncontested that taxpayer does not carry an inventory of ATVs like the dune buggy. As noted, taxpayer's business was to take orders from customers in the Emirates who would send the negotiated purchase price, and only then would taxpayer purchase a specific ATV for that customer. With this dune buggy alone, taxpayer financed the purchase himself. That is evidence that the dune buggy purchase should not be treated as identical to an auto dealer who takes a vehicle out of the dealership's inventory for use by the dealership.

Taxpayer notes that he offered the dune buggy for sale on Craigslist after a year. The attempted sale cuts both ways, however.

On the one hand, it appears uncontested that taxpayer did not sell dune buggies domestically at all. His efforts to sell this dune buggy over Craigslist in this country thus would be some evidence to support his contention that the dune buggy was not inventory.

On the other hand, taxpayer's attempt to sell the dune buggy just one year after its purchase is consistent with the conclusion that the dune buggy was inventory, even if just a single item. As noted, "inventory" is defined as property held for sale, and taxpayer attempted (albeit unsuccessfully) to sell the dune buggy. That would support the Tax Court's finding that the dune buggy was nondeductible inventory.

Moreover, other evidence also supported the Tax Court's finding that the dune buggy was inventory, and thus not deductible. The dune buggy was a demonstrator model,

which is treated as inventory. "A vehicle is not property used in the business if it is merely used for demonstration purposes[.]" Rev Rul 75-538; *see also Duval Motor Co.*, 264 F2d at 552 (concluding that a car used "to stimulate sales of all the dealer's cars" is inventory held for sale).

Taxpayer's contention that he deliberately kept the mileage low on the dune buggy also supports the Tax Court's finding that taxpayer did not expect to recover the cost of the dune buggy by "consumption through use of the vehicle in the ordinary course of business operation." Rev Rul 75-538. It shows that taxpayer had not put the dune buggy "to the use for which an automobile is intended in the hands of its ultimate consumer, that is, transporting personnel," and that he did not "commit[] [it] over [its] reasonable useful life to that purpose." *Duval Motor Co.*, 264 F2d at 551. Finally, taxpayer's admitted intention to keep the mileage low is consistent with an intention to sell the dune buggy from the outset.

In conclusion, the record, viewed as a whole, would permit a reasonable factfinder to find that the dune buggy was inventory, and thus the Tax Court's finding was supported by substantial evidence. Because the dune buggy was inventory, it was not deductible under 26 USC section 179. We affirm the Tax Court on that question.[4]

C. *Business Travel Expenses*

As noted, taxpayer contends that the Tax Court erred by disallowing business expense deductions for his payment of $7,000 to rent a vehicle in Dubai from one sister, as well as his payment of $3,150 to rent an apartment in Dubai from another sister. We affirm the Tax Court on the

---

[4] Taxpayer alternatively argues that the dune buggy should be treated as purchased for research and development, and therefore deductible under 26 USC section 174(a)(1) (allowing deduction for "research or experimental expenditures"). The Tax Court rejected that argument, because "experimental expenditures" under section 174 excludes expenditures for advertising and marketing. *See* 26 CFR § 1.174-2(a)(6)(v) ("The term research or experimental expenditures does not include expenditures for *** [a]dvertising or promotions[.]").

We agree with the Tax Court. Taxpayer's own brief in this court specifically admits that the dune buggy was intended for advertising. Taxpayer does not make any argument that the law would place the dune buggy outside that exclusion.

ground that taxpayer failed to rebut the presumption that his transfers to his sisters were gifts.

As a preliminary matter, gifts are generally not deductible. *See* 26 USC § 274(b)(1) ("No deduction shall be allowed under section 162 [authorizing deduction for ordinary and necessary expenses incurred in carrying on trade or business] *** for any expense for gifts made directly or indirectly to any individual ***[.]").

Transfers to family members are presumed to be gifts, as explained in a decision of the United States Tax Court:

> "Transactions within a family group are subject to special scrutiny in order to determine if they are in economic reality what they appear to be on their face. The presumption is that a transfer between closely related parties is a gift."

*Estate of Reynolds v. Commissioner*, 55 TC 172, 201 (1970) (internal quotation marks and citations omitted). By contrast,

> "'[gifts] embrace *** sales, exchanges, and other dispositions of property for a consideration to the extent that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth.'"

*Stern v. United States*, 436 F2d 1327, 1329 (5th Cir 1971) (regarding transactions subject to gift tax (quoting Treas Reg § 25.2512-8)).

Taxpayer's payments were made to close family members: his sisters.[5] Those payments are thus presumed to be gifts unless taxpayer presented sufficient evidence to rebut that presumption. We conclude that he did not. As the

---

[5] Taxpayer contends that his sisters were "business associates." He admitted at trial that he does not employ them. He did not offer any evidence to show that they, in fact, qualified as "business associates." *See* 26 CFR § 1.274-2(b)(2)(iii) (defining term). His assertion that they were business associates is apparently based on his having paid them for the apartment and car. That assumes what needs to be proved: that the transfers were for business purposes and at fair market value, rather than a gift.

Tax Court noted, taxpayer did not present any evidence of the fair market value of either renting a car or leasing an apartment in Dubai. It may have been financially prudent for him to make those expenditures, as he testified. But it is also possible that he overpaid his sisters as a way to make a gift to them. The fact that the sisters, and not taxpayer, rented the apartment and purchased the car is consistent with taxpayer having made them such a gift.[6]

Furthermore, the Tax Court could not determine whether or to what extent the payments were for legitimate business expenses. Although taxpayer testified at trial that he had driven the car while in Dubai, he did not identify any customer meeting for which he had needed to drive the car.[7] Similarly, taxpayer's travel log does not show the places of any of his meetings with customers. Accordingly, taxpayer offered no evidence that he had needed the auto for even a single business meeting.

As for the apartment, the rental contract submitted by taxpayer shows on its face that the apartment rental period began on May 1, 2013. Taxpayer thus could not have stayed in the apartment for any part of his first 2013 trip, which was in January, or the first half of his second trip (from April 10 to May 15). The disconnect between taxpayer's travel dates and the actual apartment rental dates further undermines any conclusion that the amounts transferred to that sister were for fair market value.

Taxpayer had attempted to introduce into evidence the translated receipts from his sisters, to show that the transfers were for a business purpose. As noted, the Tax Court sustained the department's objection to those receipts, so they were not accepted into evidence. We find no error in the Tax Court's holding.[8] And, even if the receipts had been admitted, they would not have shown that the amount

---

[6] Taxpayer testified that the contracts were in his sisters' names because he could not lawfully rent an auto or apartment in his own name, not being an Emirates resident. Even if that is true, taxpayer could still have given his sisters a gift.

[7] Indeed, taxpayer testified that the apartment was also an office for meeting with customers.

[8] Taxpayer objects to the Tax Court ruling, but he does not allege any errors in the Tax Court's discussion of hearsay law. We briefly review the law here.

taxpayer paid his sisters was fair market value for the car or apartment rental.

## III.   CONCLUSION

The issues presented to us on appeal are factual, and we review the Tax Court's findings for substantial evidence. For the reasons discussed, we conclude that substantial evidence supported the Tax Court's finding that the dune buggy was inventory, and so it was not deductible. We also conclude that substantial evidence supported the Tax Court's finding that the evidence presented by taxpayer was insufficient to rebut the presumption that his transfers to his sisters were gifts, and so those amounts could not be deducted as business travel expenses.

The judgment of the Tax Court is affirmed.

---

The Oregon Evidence Code (OEC) applies to proceedings before the Tax Court. *See* OEC 101(1)(a) (OEC "applies to all courts in this state" except as specifically listed). The OEC defines hearsay as a statement made by a declarant, other than while testifying at trial or hearing, that is "offered in evidence to prove the truth of the matter asserted." OEC 801(3). Here, the sisters were declarants. *See* OEC 801(2) (defining "declarant" as "a person who makes a statement"). The receipts contain the sisters' statements. *See* OEC 801(1)(a) (defining "statement" to include "[a]n oral or written assertion"). The sisters did not make those statements while testifying at a trial or a hearing. And taxpayer offered the receipts to prove the truth of the sisters' statements—that he had, in fact, made the transfers for a business purpose.

Taxpayer does not argue that the statements were admissible under any of the hearsay exceptions set out in OEC 801, OEC 803, or OEC 804.

Accordingly, we affirm the Tax Court's ruling excluding the affidavits.